438 So.2d 506 (1983)
EFFIE, INC., Appellant,
v.
CITY OF OCALA, Appellee.
No. 82-409.
District Court of Appeal of Florida, Fifth District.
September 29, 1983.
Dock Blanchard of Tucker, Brannen, Blanchard & Stillwell, P.A., Ocala, for appellant.
Seymour H. Rowland, Jr., Ocala, for appellee.
*507 ORFINGER, Chief Judge.
This appeal is from a judgment of the trial court holding an ordinance of the City of Ocala to be a constitutional exercise of the police power of the City and denying a location permit to appellant Effie, Incorporated (Effie) for the sale and consumption of alcoholic beverages on premises owned by Effie. We reverse.
Effie owns certain property in the City of Ocala, zoned B-2 under the city's zoning ordinance. This zoning district permits, among other businesses, the use of property for the sale and consumption on the premises of alcoholic beverages. The Ocala Code of Ordinances (the Code) imposes additional restrictions on the sale of alcoholic beverages by requiring location permits, even for property zoned for this use, and the procedure to obtain a permit varies according to the nature of the requested use. Effie applied for, and was administratively granted, a location permit to use this property for the sale of package goods for consumption off the premises. At the same time, Effie requested a permit which would also allow it to sell alcoholic beverages for consumption on the subject premises, and it is only this latter permit that is involved here.
The Code provides that before a permit will be granted for on the premises sale and consumption of alcoholic beverages, an application must be filed, the premises must be posted with an appropriate notice and written notice must be given to adjoining landowners that a public hearing will be had on the application, at which time all persons interested in either supporting or opposing the application may appear and be heard by the city council. Section 4-4(e) of the Code then provides:
... In consideration of the application, the council shall take into account the proximity of the location to schools, churches, public recreation areas, public buildings and areas of public assembly, the land use character of the area; types of streets serving the area; type of traffic using the streets; the proximity of said location being considered to other established places of business operating under permits D, E, F, or G, and all other pertinent factors that may arise in connection with the particular application and location being considered.
The record reflects that prior to the public hearing on Effie's application, an administrative report was submitted to the city council by the city's Planning Director. This report indicated, in response to a solicitation for comments on the application, that the Building, Engineering and Fire Departments had responded with "no comment" and the Police Department had reported "no problem" with the request. The report went on to indicate that no churches, schools, public recreation areas, public buildings or areas of public assembly were within any prohibited distances; that the character of the area is intensive commercial use, with a mobile home park directly to the south of the property. The report continued that the subject property was on Silver Springs Boulevard, a major arterial road with a traffic count of 25,000 vehicles per day, and that the closest establishments with similar licenses were located 2300 feet and 2500 feet distant, respectively. Following the public hearing at which the council heard objections from residents of the mobile home park to the sale of alcohol on Effie's property, the council denied the application.
Effie filed an action below seeking a determination that the applicable provisions of the Code were unconstitutional on their face, or were unconstitutionally applied. In this appeal from the trial court's ruling that the code provisions are valid, Effie contends that the challenged provisions are invalid because they fail to provide any standards or guidelines upon which the city council may act, thereby permitting the exercise of unbridled discretion by the council, thus denying Effie equal protection of the law. The trial court acted upon stipulated facts,[1] *508 and found the ordinance to be a valid enactment of the exercise of the police power of the city. It further found that the ordinance supplied sufficient criteria upon which the city could exercise its discretionary powers, and that the city council was not required to confine itself to the enumerated items of the ordinance; that the action of the council was neither arbitrary nor capricious and therefore did not deny Effie either due process or equal protection of the law. The ordinance in question appears to have been enacted following the decision in the case of ABC Liquors, Inc. v. City of Ocala, 366 So.2d 146 (Fla. 1st DCA 1979), cert. denied, 376 So.2d 69 (Fla. 1979). In that case, it appeared that an applicant, holding a proper state license, and desiring to sell liquor for on-premises consumption on property properly zoned for that purpose, was nevertheless required to obtain consent of the city council through the enactment of an approving ordinance. No guidelines existed to guide the city council in determining which applicants would or would not be approved. In striking down the ordinance, the court held:
The dispensation of alcoholic beverages is a highly regulated industry. Nevertheless the constitutional guaranty of equality before the law assures that every citizen, whether natural or corporate, be treated equally. To assure that right, regulations must be standard and criteria reasonably certain. An applicant for approval of a location must be in a position to determine the requirements and must be afforded an opportunity to comply with them. The requirements must be of uniform application. Once the requirements are met the governing body may not refuse the application. Any standards, criteria or requirements which are subject to whimsical or capricious application or unbridled discretion will not meet the test of constitutionality. (Emphasis supplied)
366 So.2d at 149.
The granting or withholding of a permit to engage in a legitimate business should not depend on the whim or caprice of the permitting authority. This principle is applicable equally to a highly regulated business such as the one involved here, ABC Liquors v. City of Ocala, supra; City of *509 Jacksonville v. Goodbread, 331 So.2d 350 (Fla. 1st DCA 1976); or to businesses not so closely regulated. Eskind v. City of Vero Beach, 159 So.2d 209 (Fla. 1863); Broward County v. Narco Realty, Inc., 359 So.2d 509 (Fla. 4th DCA 1978). In Drexel v. City of Miami Beach, 64 So.2d 317 (Fla. 1953), permits for parking garages could only be issued after a public hearing at which "due consideration" was to be given to the "effect upon traffic." In determining that the ordinance was void for insufficiency of standards upon which the City could exercise its discretionary authority, the supreme court stated:
"We think a City Council may not deprive a person of his property by declining a permit to erect upon it a certain type of garage where the only restriction on the use of the police power is that it shall not be exercised before "due consideration" is given by someone, presumably the councilmen, to the effect of the building upon traffic. Both the quoted words, as well as their synonyms, could be construed to allow all manner of latitude in the grant of a permit in one case and the denial of a permit in a similar one, and would give every opportunity for the exercise of the power with partiality.
* * * * * *
The present ordinance could easily become such an instrument of discrimination by a majority of the councilmen giving what each might think "due consideration" to traffic problems and thereafter denying a permit in one instance while granting a permit in a less meritorious case, though acting conscientiously in both. This would be possible because no uniform rules or regulations are defined to remove the sphere of action from the influences of whim or caprice."
Turning to the ordinance in question, we find that while the city council is required to consider certain enumerated matters, the ordinance is silent as to what weight or effect those matters will have. It also allows the council to consider "all other pertinent factors that may arise in connection with the particular application and location being considered" which is patently vague and obscure. The trial court held that the City was not required to confine itself to the enumerated items, or to weigh them equally or to approve the application upon compliance by the applicant with a majority of the criteria. But this interpretation by the trial court discloses the very potential inequality built into the ordinance, which thus renders it invalid. We emphasize that this is not a case where rezoning of the property is sought. Here, the city has already determined that the land is suitable for the use requested by zoning it in a manner which permits that use. If any additional requirements are to be imposed, the owner or purchaser of property so zoned has a right to know what the requirements are that he must comply with in order to implement the permitted use; these requirements must be of uniform application, and once the requirements are met, the governing body may not refuse the application. ABC Liquors, at 149. Any other interpretation promotes the evil which the decisions seek to avoid  that councilmen can act upon whim, caprice or in response to pressures which do not permit of ascertainment or correction.
The ordinance in question requires the council to "take into account" certain enumerated criteria, but with no other standard, leaves each member of the council free to arbitrarily decide how to weigh each factor, if at all. In this regard, then, the ordinance suffers from the same evil as did the ordinance in Drexel, where the city council was required to give "due consideration" to the "effect upon traffic" of a requested parking garage. Additionally, the councilmen are free to consider "all other pertinent factors" which are of unknown quantity or quality, and to give them such effect as each, in his own mind, may determine. Such does not pass constitutional muster. See also, City of Homestead v. Schild, 227 So.2d 540 (Fla. 3d DCA 1969) where the court struck down a provision in a zoning ordinance which allowed the city council to grant special use permits within zoning districts because of an absence of *510 sufficient standards and guidelines upon which such action could be based, thereby allowing for the exercise of arbitrary discretion by the governing body.
Clearly, the opportunity for the exercise of unbridled discretion is present here, and whether so exercised or not, renders the ordinance unconstitutional. Because we find the ordinance in question to be invalid, we do not address the issue of whether the city has the legal authority to impose any additional restrictions for the issuance of a permit beyond those contained in the general zoning laws.
The final judgment is reversed and the cause is remanded to the trial court with directions to enter a judgment for appellant.
REVERSED and REMANDED.
DAUKSCH and SHARP, JJ., concur.
NOTES
[1] The stipulated facts, as they refer to the evidence presented at the public hearing, are:

C. That on or about January 6, 1981, a public hearing was held by the City of Ocala pursuant to the Code of the City of Ocala under Section 4-4(E) for the purpose of considering the application of the Plaintiff in this cause.
D. That with regard to evidence taken at that hearing there was no evidence that the location listed in the permit application of the Plaintiff was in such close proximity to the location of schools, churches, public recreation areas, public buildings and areas of public assembly as to preclude it from being granted a license.
E. That with regard to the above described public hearing there was no evidence presented that the location listed in the permit of the Plaintiff would change or alter the present land use character of the area.
F. That with regard to the location listed in the application of the Plaintiff there was no evidence presented that the granting of the permit of the Plaintiff would have detrimental effect upon the types of streets serving the area.
G. That with regard to the above described public hearing there was no evidence presented that the location listed in the application of the Plaintiff if granted a permit would detrimentally affect the type of traffic using the streets surrounding the location listed in the permit of the Plaintiff.
H. That with regard to the above described public hearing there was no evidence presented that the location listed in the application of the Plaintiff if granted a permit would detrimentally affect the health, safety and public morals of the public at large with regard to its proximity to other established places of businesses operating under permits D, E, F or G.
I. That with regard to the above described public hearing there was no evidence presented as to any other pertinent factors which would be detrimental if the application of the Plaintiff were granted.
J. That with regard to the above described public hearing held by the City Council the only objection presented out of the persons appearing and giving evidence was that the location was immediately adjacent to a mobile home park.
K. That with regard to the above described public hearing there was evidence presented that there were already other business establishments in the same area which would have the same impact upon the mobile home park as would the permit if granted to the Plaintiff.